*BMD*

**FILED**
10-14-08
OCT 14 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

United States District Court
Southern District of New York
Office of the Clerk
U.S. Courthouse
500 Pearl Street
New York, N.Y. 10007

*00cr 454*

Date: _10/10/2008_

Re: United States of America v. _GLENN B. LAKEN_

Docket number: _S4-00-CR-632-17_ (WAP) & 00-CR-651-01 (CLHP)
_(refer to Doc# 850)_

Dear Clerk:

Pursuant to the Transfer of Jurisdiction signed in the above captioned case, enclosed are the following documents:

(1)  certified copy of the Transfer of Jurisdiction; _(in BOTH cases)_.
(2)  certified copy of Judgment In A Criminal Case; and
(3)  certified copy of the charging instrument, check one:

☑  Indictment _(in BOTH cases)_.
☐  Information and Waiver of Indictment

(4)  _Certified copy of the DOCKET SHEET (in BOTH cases)._

Your acknowledgment of receipt of the above documents on the copy of this letter will be appreciated.

Sincerely,
J. Michael McMahon, Clerk

By: _____  B.A.
Deputy Clerk

~~Certified Mail#~~  *FEDEX AIRBILL*  _8663-0804-9429_

---

**RECEIPT IS ACKNOWLEDGED OF THE DOCUMENTS DESCRIBED HEREIN:**

**ASSIGNED CASE NUMBER:** _____  **Clerk, U.S. District Court**

**DATE:** _____  **By:** _____
**Deputy Clerk**

rev. 2/15/2006

AO 245C (8/96) Sheet 1 - Amended Judgment in a Criminal Case (NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT
## Southern District of New York

DOC # 837

| | |
|---|---|
| UNITED STATES OF AMERICA | **AMENDED JUDGMENT IN A CRIMINAL CASE** |
| **V.** | (For Offenses Committed On or After November 1, 1987) |
| GLEN B. LAKEN | Case Number: ~~███████~~ (WHP) ← File in |
| | 1: 00 Cr. 00651 - 01 (WHP) |

**Date of Original** 12/02/2003
**(Or Date of Last Amended Judgment)**

Richard Levitt, Esq., Gary G. Becker, Esq.
Defendant's Attorney

**Reason for Amendment:**

☐ Correction of Sentence on Remand (Fed. R. Crim. P. 35(a))
☐ Reduction of Sentence for Changed Circumstances (Fed. R. P. 35(b))
☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(c))
☐ Correction of Sentence for Clerical Mistake (Fed. R. Crim. P.

☐ Modification of Supervision Conditions (18 U.S.C. § 3563(c) or 3583(e))
☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S. § 3582(c)(1))
☐ Modifications of Imposed Term of Imprisonment for Retroactive to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))
☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255,
☐ 18 U.S.C. § 3559(c)(7)   X Modification of Restitution Order

**THE DEFENDANT:**

xx pleaded guilty to count(s) 1 of case number 1: 00 Cr. 00651 - 01 (WHP)

☐ pleaded nolo contendere to count(s) _____
which was accepted by the court.

xx was found guilty on count(s) 2,9,10,11,12,13,14 of case number 1: S4 00 Cr. 00632 - 17 (WHP)
after a plea of not guilty.

DOCKETED AS #03/1876
A JUDGMENT
ON 7/24/06

| Title & Section | Nature of Offense | Date Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC 1962(d) | Racketeering Conspiracy | 06/14/2000 | 2 |
| 18 USC 371 | Conspiracy to commit union pension fund fraud and kickback conspiracy | 06/14/2000 | 9 |
| 18 USC 1343, 1346 and 2 | Wire Fraud | 03/02/2000 | 10 |
| 18 USC 1954 and 2 | Payment of illegal kickbacks | 06/14/2000 | 11 |

The defendant is sentenced as provided in pages 2 through __8__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

xx Count(s) _____ underlying and open _____ ☐ is  x are dismissed on the motion of the United States.

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. _____

Defendant's Date of B _____

Defendant's USM No. _____

Defendant's Residence _____

09/03/2003
Date of Imposition of Judgment

_signature_
Signature of Judicial Officer

William H. Pauley III, United States District Judge
Name and Title of Judicial Officer

7-19-06
Date

U.S. DISTRICT COURT
FILED
JUL 19 2006
S.D. OF N.Y.

10/10/08

AO 245C    (6/99) Amended Judgment in a Criminal Case
           Sheet 1 — Reverse                                                    (NOTE: Identify Changes with Asterisks (*))

Judgment — Page __2__ of __8__

DEFENDANT:        Glen B. Laken
CASE NUMBER:      1: S4 00 Cr. 00632 - 17 (WHP), 1: 00 Cr. 00651 - 01 (WHP)

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC 1343 and 2 | Wire fraud | 04/13/2000 | 12 |
| 18 USC 1343, 1346 and 2 | Theft of honest services | 04/24/2000 | 13 |
| 18 USC 1954 and 2 | Payment of illegal kickbacks | 06/14/2000 | 14 |
| **Case Number** | **1: 00 Cr. 00651 - 01 (WHP)** | | |
| 18 USC 371 | Conspiracy to commit securities fraud | 06/14/2000 | 1 |

Judgment — Page __3__ of __8__

DEFENDANT: Glen B. Laken
CASE NUMBER: 1: S4 00 Cr. 00632 - 17 (WHP), 1: 00 Cr. 00651 - 01 (WHP)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of __63 MONTHS__ .

The sentences on Count 2 of S4 00 Cr. 632 (WHP), which carries a statutory maximum of twenty (20) years, is sixty-three (63) months. The sentences on Counts 9,10,12 and 13 of S4 00 Cr. 632 (WHP), and Count 1 of 00 Cr. 651 - 01 (WHP), each of which carries a statutory maximum of five (5) years, is sixty (60) months. The sentences on Counts 11 and 14 of S4 00 Cr. 632 (WHP), which carry a statutory maximum of three (3) years, is thirty-six (36) months. The sentences on all counts shall run concurrently with each other.

xx    The court makes the following recommendations to the Bureau of Prisons:

> 1. The defendant be designated to his current location at the Yankton, South Dakota facility.
> 2. The defendant be offered the next available slot to participate in the Bureau of Prisons intensive alcohol treatment program.

X    The defendant is remanded to the custody of the United States Marshal.

☐    The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.    on _____ .

    ☐ as notified by the United States Marshal.

☐    The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

_____

_____

_____

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
Deputy U.S. Marshal

DEFENDANT:         Glen B. Laken
CASE NUMBER:       1: S4 00 Cr. 00632 - 17 (WHP), 1: 00 Cr. 00651 - 01 (WHP)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of  2 years                      .
The term of supervised release on Counts 2,9,10,12, and 13 of S4 00 Cr. 632 (WHP), and Count 1 of 00 Cr. 651 - 01 (WHP), each of which carries a statutory maximum term of supervised release of three (3) years, is two (2) years.  The term of supervised release on Counts 11 and 14 of S4 00 Cr. 632 (WHP), which carry a statutory maximum term of supervised release of one (1) year, is one (1) year.  All terms of supervised release are to be run concurrently on all counts.

     The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not illegally possess a controlled substance.

*For offenses committed on or after September 13, 1994*:

     The defendant shall refrain from any unlawful use of a controlled substance.  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as directed by the probation officer.

☐       The above drug testing condition is suspended based on the court's determination that the defendant poses a low risk future substance abuse.  (Check, if applicable.)

XX       The defendant shall not possess a firearm as defined in 18 U.S.C. § 921.  (Check, if applicable.)

     If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal Monetary Penalties sheet of this judgment.

     The defendant shall comply with the standard conditions that have been adopted by this court (set forth below).  The defendant shall also comply with the additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;

10)   the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)   the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)   the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;

13)   as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245C    (6/99) Amended Judgment in a Criminal Case
Sheet 3 — Continued 2 — Supervised Release
Case: 1:00-cr-00454 Document #: 8 Filed: 10/14/08 Page 6 of 107 PageID #:13
(NOTE: Identify Changes with Asterisks (*))

Judgment—Page    5    of    8

DEFENDANT:         Glen B. Laken
CASE NUMBER:       1: S4 00 Cr. 00632 - 17 (WHP), 1: 00 Cr. 00651 - 01 (WHP)

## SPECIAL CONDITIONS OF SUPERVISION

1. The defendant shall provide the probation officer with access to any requested financial information.

2. The defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

3. The defendant shall participate in an alcohol aftercare treatment program under a co-payment plan, which may include urine testing at the direction and discretion of the probation officer.

4. The defendant shall report to the nearest Probation Office within 72 hours of release from custody.

5. The defendant shall be supervised by the district of residence.

6. The defendant shall pay a fine payable to the Clerk, U.S. District Court in the amount of $100,000.00. The fine shall be paid from monies previously held in an escrow account for the defendant. If the fine is not able to be satisfied prior to defendant's release, the fine shall be paid in monthly installments of 15 % of the defendant's gross monthly income over a period of supervision to commence 30 days after the date of the judgment or defendant's release from imprisonment.

AO 245C    (8/96) Amended Judgment in a Criminal Case
Sheet 5, Part A — Criminal Monetary Penalties                                    (NOTE: Identify Changes with Asterisks (*))

Judgment — Page __6__ of __8__

DEFENDANT:        Glen B. Laken
CASE NUMBER:      1: S4 00 Cr. 00632 - 17 (WHP), 1: 00 Cr. 00651 - 01 (WHP)

## CRIMINAL MONETARY PENALTIES

|  | Assessment | Fine | Restitution |
|---|---|---|---|
| **Totals:** | $  800.00 | $  100,000.00 | $  N/A |

☐   If applicable, restitution amount ordered pursuant to plea agreement . . . . . . . . . . . .   $ _____

## FINE

The above fine includes costs of incarceration and/or supervision in the amount of       $ _____ .

The defendant shall pay interest on any fine more than $2,500, unless the fine is paid in full before the fifteenth day after the date of judgment, pursuant to 18 U.S.C. § 3612(f). All of the options on Sheet 5, Part B may be subject to penalties for default and delinquency pursuant to 18 U.S.C. § 3612(g).

The court has determined that the defendant does not have the ability to pay interest and it is ordered that:

☐   The interest requirement is waived.

☐   The interest requirement is modified as follow:

## RESTITUTION

☐   The determination of restitution is deferred until _____ . An Amended Judgment in a Criminal Case will be entered after such determination.

☐   The defendant shall make restitution to the following payees in the amounts listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportional payment unless specified otherwise in the priority order or percentage payment column below.

| Name of Payee | **Total Amount of Loss | Amount of Restitution Ordered | Priority Order or Percentage of Payment |
|---|---|---|---|
| **Totals:** | $ _____ | $ _____ | |

** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994 but before April 23, 1996.

Case 1:00-cr-00454 Document #: 8 Filed: 10/14/08 Page 8 of 107 PageID #:15

DEFENDANT:      Glen B. Laken
CASE NUMBER:    1: S4 00 Cr. 00632 - 17 (WHP), 1: 00 Cr. 00651 - 01 (WHP)

## ADDITIONAL TERMS FOR CRIMINAL MONETARY PENALTIES

1. The defendant shall pay a fine payable to the Clerk, U.S. District Court in the amount of $100,000.00.  The fine shall be paid from monies previously held in an escrow account for the defendant.  If the fine is not able to be satisfied prior to defendant's release, the fine shall be paid in monthly installments of 15 % of the defendant's gross monthly income over a period of supervision to commence 30 days after the date of the judgment or defendant's release from imprisonment

2. The fine shall be sent to the Clerk of the Court, Southern District of New York , 500 Pearl Street, New York, NY 10007, Att: Cashier's Office.

3. The defendant shall notify the United States Attorney for the district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

DEFENDANT:     Glen B. Laken
CASE NUMBER:   1: S4 00 Cr. 00632 - 17 (WHP), 1: 00 Cr. 00651 - 01 (WHP)

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order:  (1) assessment;  (2) restitution;  (3) fine principal;  (4) cost of prosecution; (5) interest;  (6) penalties.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

**A**  ☐  In full immediately; or

**B**  x  $  800.00 _____  immediately, balance due (in accordance with C, D, or E); or

**C**  ☐  not later than  _____ ; or

**D**  ☐  in installments to commence  _____  days after the date of this judgment.  In the event the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervision, the U.S. probation officer shall pursue collection of the amount due, and shall request the court to establish a payment schedule if appropriate; or

**E**  ☐  in  _____  (*e.g., equal, weekly, monthly, quarterly*) installments of $  _____  over a period of _____  year(s) to commence  _____  days after the date of this judgment.

**The defendant will be credited for all payments previously made toward any criminal monetary penalties imposed.**

Special instructions regarding the payment of criminal monetary penalties:
1. The defendant shall pay a fine payable to the Clerk, U.S. District Court in the amount of $100,000.00.  The fine shall be paid from monies previously held in an escrow account for the defendant.  If the fine is not able to be satisfied prior to defendant's release, the fine shall be paid in monthly installments of 15 % of the defendant's gross monthly income over a period of supervision to commence 30 days after the date of the judgment or defendant's release from imprisonment

2. The fine shall be sent to the Clerk of the Court, Southern District of New York , 500 Pearl Street, New York, NY 10007, Att: Cashier's Office.

3. The defendant shall notify the United States Attorney for the district within 30 days of any change of mailing or residence address that occurs while any portion of the restitution remains unpaid.

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Unless the court has expressly ordered otherwise in the special instructions above, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment.  All criminal monetary penalty payments, except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program, are to be  made as directed by the court, the probation officer, or the United States attorney.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DOC #381

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                :        **INDICTMENT**

      - v -                                   :        S4 00 Cr. 632 (WHP)

(#16) STEPHEN E. GARDELL,                 :
(#16) JOHN M. BLACK, JR.,                 :
(#16) ANGELO CALVELLO,                    :
      a/k/a "Tony,"
(#15) JOSEPH A. MANN,
      a/k/a "Andy,"
(#16) WILLIAM M. STEPHENS,
      a/k/a "Bill,"
(#17) GLENN B. LAKEN,
(#18) GENE PHILLIPS,
(#19) A. CAL ROSSI, and                   :
(#21) WILLIAM F. PALLA,                   :

                          :

           Defendants.             :

- - - - - - - - - - - - - - - - - x



*(stamp: U.S. DISTRICT COURT FILED AUG 27 2001 S.D. OF N.Y.)*

**MICROFILM**
**SEP - 5 2001 ~4:00 PM**

### RACKETEERING CHARGES

### COUNT ONE

### Racketeering

The Grand Jury charges:

### The Enterprise

      At all times relevant to this Indictment, in the
Southern District of New York and elsewhere:

      1.    DMN Capital Investments, Inc. ("DMN Capital"),
held itself out as a financial advisory firm that provided
investment banking and stock promotion services.  DMN Capital
first maintained an office at 67 Liberty Street in New York, New

York and later established its office at 5 Hanover Square, New York, New York.

2.    STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, A. CAL ROSSI, and WILLIAM F. PALLA, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Anthony P. Stropoli, Salvatore R. Piazza, a/k/a "Sal," Cary F. Cimino, Sebastian Rametta, a/k/a "Sebbie," James F. Chickara, Robert P. Gallo, a/k/a "Bobby," Michael T. Grecco, Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, Steven J. D'Apuzzo, and others known and unknown, and DMN Capital, were members and associates of a criminal organization engaged in securities fraud, wire fraud, pension fund fraud, illegal kickbacks to union officials, extortion, money laundering, bribery, witness tampering and murder solicitation.

3.    The organization, including its leadership, its membership, and its associates, constituted an "enterprise," as that term is defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals and entity, DMN Capital, associated in fact, although not a legal entity.  At various times relevant to this Indictment, the enterprise operated in the Southern and Eastern Districts of New York, the District of New

2

Jersey, the Northern District of Illinois, the Northern District of Texas, and the Northern District of California, among other locations in the United States and abroad. At all times relevant to this Indictment, the enterprise was engaged in, and its activities affected, interstate and foreign commerce.

4. The enterprise charged in this Indictment consisted of individuals, a number of whom were members and associates of Organized Crime Families of La Cosa Nostra ("LCN Families") in the New York City area, namely the Bonanno Crime Family, the Colombo Crime Family, the Gambino Crime Family, the Genovese Crime Family, and the Luchese Crime Family, associated together with DMN Capital to engage in criminal activities.

5. The enterprise used its affiliation with various LCN Families to further the illegal goals of the enterprise. The members and associates of the enterprise charged in this Indictment were united by their common criminal interests, regardless of the particular LCN Family, if any, with which a particular individual was associated.

## Purposes of the Enterprise

6. The purposes of the enterprise included the following:

a. Enriching the members and associates of the enterprise through, among other things, securities fraud, wire fraud, and extortion;

3

b.     Concealing and promoting the enterprise's unlawful activity by laundering the proceeds of securities fraud and wire fraud; and

c.     Preserving, protecting, and augmenting the power and financial profits of the enterprise through the use of intimidation, threats of violence, actual violence, intimidation, bribery of public officials, obstruction of justice, witness tampering and murder solicitation.

### Means and Methods of the Enterprise

7.     Among the means and methods employed by the members and associates of the enterprise in the conduct of the enterprise were the following:

**A.     Schemes To Defraud Investors
In Publicly Traded Securities**

8.     The enterprise sought and obtained secret control of large blocks of free trading securities of publicly traded companies at little or no cost to the enterprise.  The enterprise obtained inexpensive free trading stock by, among other means, systematically exploiting and violating various rules and regulations of the United States Securities and Exchange Commission ("SEC") governing the registration and issuance of securities, and, in certain instances, entering into illegal agreements with persons in control of public companies to violate said SEC rules and regulations for the purpose of conveying inexpensive stock to the enterprise.  The enterprise then

4

fraudulently inflated the market prices of these securities through, among other means, (a) engaging in prearranged trades that were fraudulently designed to give the appearance of legitimate market activity; (b) unlawfully stimulating retail demand for securities by paying secret bribes to stock brokers to cause their customers to buy and hold securities; and (c) controlling and attempting to control the available supply of securities. The enterprise then defrauded investors by selling the securities that the enterprise secretly controlled to investors in transactions that had been unlawfully motivated by bribes and that were generally at prices that had been fraudulently inflated by the enterprise.

9. The following publicly traded companies, among others, entered into corrupt agreements with the enterprise in furtherance of the enterprise's schemes to defraud investors:

a. Spaceplex Amusement Centers International Ltd. ("Spaceplex"), a Nevada corporation that maintained its principal place of business in Great Neck, New York. Spaceplex common stock was listed on the OTC Bulletin Board, a regulated quotation service that displayed real-time quotes, last-sale prices, and volume information in over-the-counter ("OTC") securities.

b. Reclaim Inc. ("Reclaim"), a Delaware corporation that maintained its principal place of business in

5

place of business in El Cajon, California. Innovative Medical common stock and warrants were listed on the NASDAQ Small Cap market.

        b.    Accessible Software, Inc. ("Accessible Software"), a New Jersey corporation that maintained its principal place of business in Annandale, New Jersey. Accessible Software common stock was listed on the OTC Bulletin Board.

        11.  The enterprise used DMN Capital to, among other things, negotiate and enter into fraudulent agreements with issuers, maintain secret control of securities, and funnel illegal payments to stock brokers. DMN Capital, both directly and indirectly, controlled numerous other entities as well as bank and brokerage accounts for the purpose of achieving the unlawful purposes of the enterprise.

        12.  To facilitate its schemes to defraud investors in publicly traded securities, the enterprise infiltrated and gained secret control of brokerage firms and branch offices of brokerage firms, including:

        a.    Monitor Investment Group, Inc., a broker-dealer that was registered with the SEC and that operated branches at 20 Exchange Place, 919 Third Avenue and 30 Broad Street in New York City. From in or about September 1995 to in or about June 1996, the enterprise operated Monitor's three New York branches as "boiler rooms" and employed a host of

manipulative sales practices that facilitated the sale of
Beachport, International Nursing, Accessible Software and other
securities (the "House Stocks") to unwitting investors. Among
other fraudulent sales practices at Monitor, the enterprise,
through its members and associates, (i) manipulated the retail
sales price of House Stocks on a daily basis; (ii) paid brokers
exorbitant commissions based upon excessive "spreads" or "mark-
ups" that the enterprise controlled through its domination of the
market for the House Stocks; (iii) systematically failed to
disclose its fraudulent mark-ups and exorbitant commissions to
its customers; (iv) prohibited Monitor's brokers from executing
sell orders from Monitor's customers on House Stocks; (v) paid
secret bribes to select brokers at Monitor; and (vi) employed
scores of unlicensed brokers and cold-callers.

     b.   A branch of Meyers Pollack and Robbins, a
broker-dealer registered with the SEC, located at 30 Broad
Street, New York, New York. From in or about July 1996 to in or
about September 1996, the enterprise entered into an agreement
with the principal of Meyers Pollack that permitted its former
Monitor branch at 30 Broad Street to continue operation as a
Meyers Pollack branch. The enterprise used its secret control of
the 30 Broad Street branch of Meyers Pollack to, among other
things, defraud investors in the securities of Innovative Medical
and Leasing Edge.

8

c. Two branches of First Liberty Investment Group, Inc., a broker dealer registered with the SEC, located at 80 Broad Street and 84 William Street in New York, New York. The enterprise also exercised significant control over First Liberty's trading operations. The enterprise used its secret control at First Liberty to facilitate the scheme to defraud investors in Globus International and Innovative Medical.

13. The enterprise also entered into corrupt deals with brokers at other firms who, in return for secret bribes, agreed to cause their customers to buy and hold (or "put away") securities. These bribes were paid in the form of cash, securities, payments to third-party nominees, as well as securities sold in rigged transactions at substantial discounts to the then-prevailing market price. In addition to bribing individual brokers, the enterprise entered into bribery arrangements to "put away" securities with the principals of branches of other firms, as well as with persons who controlled "crews" of brokers acting in concert with respect to a particular security, including the following:

a. A crew of brokers at William Scott & Company, a broker-dealer registered with the SEC that was located in Union, New Jersey. This crew of brokers agreed to be bribed to "put away" Reclaim, International Nursing, Leasing Edge, and Innovative Medical securities, among others.

9

b.    The principals of the Meyers Pollack branch located at 67 Wall Street who agreed to be bribed to "put away" International Nursing, Leasing Edge, and Innovative Medical securities, among others.

c.    A crew of brokers at Atlantic General Financial Group, a broker-dealer registered with the SEC that operated a branch at 19 Rector Street, New York, New York.  This crew of brokers agreed to be bribed to "put away" Spaceplex and Reclaim and later entered in an agreement with the enterprise to operate Monitor's 20 Exchange Place branch.

14.    In addition to the schemes to defraud investors in Spaceplex, Reclaim, Beachport, International Nursing, Leasing Edge, Innovative Medical, Accessible Software and Globus International securities, all of which featured actual and attempted control and domination of the market for each security, the enterprise periodically sought illegal profits through its participation in, and facilitation of, schemes where the illegal conduct was the paying of bribes to brokers in return for causing their customers to "put away" securities.  The securities of the following companies, among others, were the subject of broker bribery schemes that the enterprise facilitated:

a.    Healthwatch, Inc., a Minnesota corporation that maintained its principal place of business in Atlanta, Georgia.  Healthwatch common stock was listed on the NASDAQ Small

Cap market. The enterprise facilitated bribes to brokers at Bell
Investment Group, a broker-dealer registered with the SEC
located in New York, New York, in return for "putting away"
Healthwatch stock.

b. GTrade.Network, Inc., ("GTrade"), a Delaware
corporation that maintained its principal place of business in
Great River, New York. The enterprise facilitated bribes to
brokers at Bryn Mawr Investment Group, a broker-dealer registered
with the SEC with branch offices in New York, New York and Staten
Island, New York, in return for "putting away" GTrade stock.

B. **Extortion, Threats and Intimidation**

15. The enterprise used extortion, threats and
intimidation to further its illegal activities in the public
securities markets. The enterprise used its LCN Family backing
and affiliation to instill fear in brokers and other market
participants who did business with the enterprise. A principal
objective was to enforce agreements with brokers to "put away"
stock in return for bribes. Brokers who reneged on these
agreements were subject to beatings and threats of beatings. The
enterprise used extortionate means to seek repayment of bribes
from brokers and stock promoters who, contrary to the illegal
agreement to keep securities "put away," permitted brokerage firm
customers to sell such securities to the market. Another
objective was to enforce discipline among brokers who worked in

11

brokerage firms controlled and dominated by the enterprise. Brokers employed at Monitor's 20 Exchange Place branch who failed to push Monitor's House Stocks on Monitor's customers were subjected to intimidation and violence at the hands of members and associates of the enterprise.

**C.   Schemes To Defraud Investors
      In Private Placements of Securities**

16. The enterprise entered into unlawful agreements with companies that sought to sell securities to investors in private placements. Members and associates of the enterprise dominated and controlled each of these companies. The essence of these unlawful agreements was that brokers who sold securities in these private placements would be paid secret exorbitant sales commissions of up to 50 percent of the proceeds obtained from investors. The enterprise profited by retaining a portion of these excessive sales commissions for itself. The enterprise also sought to further the control and domination of its members and associates over these companies by assisting in raising capital through fraudulent means. Among other private placements of securities, the enterprise fraudulently sold and agreed to cause the sale of securities issued by the following companies:

a. Ranch*1 Inc., a Delaware corporation with its principal place of business in New York, New York. Ranch*1 operated and franchised fast-food restaurants featuring grilled

12

chicken sandwiches throughout the New York City area and elsewhere.

b.     World Gourmet Soups, Inc., d/b/a "The Manhattan Soup Man," ("Manhattan Soup Man"), a Delaware corporation with its principal place of business in New York, New York.  Manhattan Soup Man operated and franchised fast food restaurants and kiosks and sold prepared soups to the restaurant industry.

c.     Jackpot Entertainment Magazine, Inc., ("Jackpot") a New York corporation with its principal place of business in Brooklyn, New York.  Jackpot published a magazine on the gaming industry.

**D.    The Money Laundering Schemes**

17.    The enterprise engaged in, and caused other persons and entities to engage in, a variety of financial transactions with the proceeds of its securities fraud schemes that were designed to conceal the fact that funds received from defrauded investors were the proceeds of specified unlawful activity, and to promote continuing schemes to defraud investors. These laundering transactions took the following forms, among others:  (a) structured withdrawals of cash from financial institutions; (b) checks drawn on DMN-controlled bank accounts in the names of nominees to pay off brokers; (c) wire transfers of funds to bank and brokerage accounts in the names of nominees to

13

pay bribes to brokers; and (d) wire transfers of funds to bank accounts of persons who agreed to return cash to the enterprise in return for a fee.

**E.    The Union Pension Fund**
       **Fraud and Kickback Schemes**

18.    In or about the Fall of 1999, the enterprise expanded its racketeering activity to include schemes to defraud the pension funds of various union locals and to pay illegal kickbacks to union officials.  Some of these union locals were influenced by LCN Families, including Production Workers Local 400, which was influenced by the Colombo Crime Family.  In addition to these union locals, the enterprise also targeted the pension fund of the Detectives' Endowment Association, the labor organization that serves the interests of detectives of the New York City Police Department.

19.    To achieve its unlawful objectives, the enterprise devised two fraudulent investments that appeared to be investments suitable for pension funds and that were designed to appear legitimate so as to withstand the scrutiny of honest union officials.  These fraudulent investments included:

a.    A securities offering of American Realty Trust, a publicly traded real estate investment trust that was listed on the New York Stock Exchange under the ticker symbol "ARB."  The affairs of American Realty Trust were controlled by Basic Capital Management Inc. ("Basic Capital"), a Dallas, Texas

14

advisory firm that also advised three related real estate investment trusts. Pursuant to the scheme, Basic Capital agreed with the enterprise to cause American Realty Trust to issue a series of preferred stock (the "ARB Series J Preferred Stock"). Basic Capital further agreed with the enterprise that for every $10 million of ARB Series J Preferred Stock sold to institutional buyers, including union pension funds, Basic Capital would cause approximately $2 million of the proceeds to be paid secretly to the enterprise. The enterprise, including members and associates affiliated with Basic Capital, planned to pay off corrupt union officials with a portion of its share of the offering proceeds.

       b.    An offering of interests in a hedge fund known as the "TradeVentureFund," which represented itself as having a proprietary trading strategy in securities, commodities, futures, and options as well as stocks that permitted it to significantly out-perform such market benchmarks as the Standard & Poor's 500 Index and the NASDAQ Composite Index. TradeVentureFund also claimed to set aside a portion of its funds under management for venture capital investments in companies. Pursuant to the scheme, TradeVentureFund would churn commodities transactions, thereby generating excessive trading commission expenses, a portion of which would be kicked back to the enterprise. The enterprise in turn planned to pay off corrupt

15

union officials with a portion of its share of the kickback. In addition, TradeVentureFund planned to place a portion of its venture capital funds in fraudulent deals coordinated by members and associates of the enterprise in a manner designed to generate unlawful profits for the enterprise.

**F.      Bribery and Witness Tampering**

20.   The enterprise sought to impede federal law enforcement scrutiny of its illegal activities, and the illegal activities of members and associates of LCN Families, by obtaining confidential information concerning federal law enforcement investigations and disseminating such information to members and associates of the enterprise. This confidential information concerned, among other things, whether members and associates of the enterprise, as well as members and associates of LCN Families, were the subjects of federal grand jury investigations, faced imminent indictment and arrest, and were the subjects of electronic surveillance. The enterprise shared this information with members and associates of LCN Families in the New York City area.

21.   The enterprise sought to identify informants and cooperating witnesses whom the enterprise believed had assisted the Federal Bureau of Investigation in its investigations and who agreed to testify in federal criminal trials of members and associates. The enterprise further sought to prevent the

16

attendance and testimony of cooperating witnesses at grand jury proceedings and trials through, among other means, the solicitation of murder.

### The Defendants And Members Of The Enterprise

22.  At various times relevant to the Indictment, the defendants and others listed below were members of the enterprise:

a.   Robert A. Lino, a/k/a "Little Robert," was a soldier and later a capo in the Bonanno Crime Family.  Lino supervised the activities of members and associates of the enterprise.  Lino used his membership in the Bonanno Crime Family to control the activities of the members and associates of the enterprise and to resolve disputes among the members and associates, as well as disputes between members and associates of the enterprise and others.

b.   James S. Labate, a/k/a "Jimmy," was an associate of the Gambino Crime Family who had functioned as an associate of the Bonanno Crime Family and had endeavored to become a member of that crime family.  Labate was a partner in the operation of DMN Capital.  Among other things, Labate participated in the enterprise's schemes to defraud, and used threats, intimidation, and extortion to further the interests of the enterprise.

c.    Frank A. Persico, a/k/a "Frankie," was an associate of the Colombo Crime Family.  Persico was a registered stock broker who headed crews of corrupt brokers at William Scott, First Liberty, and Bryn Mawr.  Persico participated in the enterprise's schemes to defraud investors in Reclaim, International Nursing, Leasing Edge, Innovative Medical, Globus International, and GTrade, among others.  As of in or about June 1999, Persico was the Treasurer of Production Workers Local 400 in New York, New York ("Local 400").  Persico used his status with the Colombo Crime Family to facilitate the enterprise's plan to defraud Local 400.

d.    Anthony P. Stropoli was an associate of and later a soldier in the Colombo Crime Family.  Stropoli controlled the 80 Broad Street branch of First Liberty and later, together with Frank Persico, the defendant, secretly controlled Bryn Mawr Investment Group branches in Manhattan and on Staten Island. Among other things, Stropoli participated in the scheme to defraud investors in Globus International and in the enterprise's money laundering activities.

e.    Salvatore R. Piazza, a/k/a "Sal," was an associate of the Bonanno Crime Family, a partner in DMN Capital and an owner of Monitor.  Among other things, Piazza facilitated the enterprise's secret control of Monitor and coordinated the payment of secret bribes to brokers.

18

f.    STEPHEN E. GARDELL, the defendant, was a New York City Police Department ("NYPD") Detective and the Treasurer of the Detectives' Endowment Association ("DEA"). Among other things, GARDELL received bribes in return for providing confidential information concerning federal law enforcement operations to other members and associates of the enterprise, and corruptly agreed to defraud the DEA pension plan for the benefit of the enterprise and for personal profit.

g.    Cary F. Cimino was a New York-based stock promoter who, among other things, arranged for secret bribes to scores of corrupt brokers on deals controlled by the enterprise, including Spaceplex, Reclaim, Beachport and International Nursing. Cimino also solicited the murder of a person he believed to be a cooperating witness.

h.    Sebastian Rametta, a/k/a "Sebbie," was an associate of the Colombo Crime Family. Rametta was the president and chief executive officer of Ranch*1, and controlled stock in Ranch*1 and Manhattan Soup Man. Rametta agreed with members and associates of the enterprise to defraud investors in Ranch*1 and Manhattan Soup Man securities offerings both to obtain money and to advance the interests of the Colombo Crime Family in these businesses.

i.    James F. Chickara was an associate of the Colombo Crime Family. Chickara was the vice chairman of Ranch*1,

19

and controlled stock in Ranch*1 and Manhattan Soup Man. Chickara agreed with members and associates of the enterprise to defraud investors in Ranch*1 and Manhattan Soup Man securities offerings both to obtain money and to advance the interests of the Colombo Crime Family in these businesses.

j. Robert P. Gallo, a/k/a "Bobby," was an associate of the Genovese Crime Family who, among other things, assisted members and associates of the enterprise in operating Monitor, recruiting crews of brokers to work on behalf of the enterprise, and facilitating secret cash payments to crews of brokers at other brokerage firms, including William Scott and Atlantic General.

k. Michael T. Grecco was an associate of the Colombo Crime Family who, among other things, presented fraudulent deals to the enterprise, assisted members and associates of the enterprise in laundering the proceeds of unlawful activity, and facilitated secret cash payments to brokers.

l. JOHN M. BLACK, JR., the defendant, was an associate of the Luchese Crime Family and the principal of Grady and Hatch & Company Inc., a broker-dealer in New York, New York. Among other things, BLACK facilitated the union pension fund schemes by recruiting GLENN B. LAKEN, the defendant, to the enterprise.

m.    ANGELO CALVELLO, a/k/a "Tony," the defendant, assisted members and associates of the enterprise in recruiting union locals, including Local 137 of the Operating Engineers Union, to participate in fraudulent investment schemes.   In addition, CALVELLO agreed to participate in a fraudulent private offering of Ranch*1 stock.

n.    JOSEPH A. MANN, a/k/a "Andy," the defendant, was a stock promoter and investment banker who controlled, among other entities, First Columbus Securities, Ltd., a purported broker-dealer based in Nevis, West Indies, and the International Depositary Trust Corp.  Among other things, MANN introduced to the enterprise corrupt deals, including Spaceplex, GTrade, and ARB Series J Preferred Stock, assisted in fraudulent promotions and market manipulation, and shared in the unlawful proceeds of securities fraud.

o.    WILLIAM M. STEPHENS, a/k/a "Bill," the defendant, was the chief investment strategist of Husic Capital Management, an investment adviser based in San Francisco, California.  Among other things, STEPHENS agreed to bribe union officials to induce them to place union pension assets under his management and to violate his fiduciary duties to his clients by investing those assets in ARB Series J Preferred Stock and TradeVentureFund.

p.   GLENN B. LAKEN, the defendant, was the principal manager of the TradeVentureFund.  Among other things, LAKEN participated in the union pension fund and kickback schemes by recruiting WILLIAM M. STEPHENS, a/k/a "Bill," the defendant, and agreeing to pay secret bribes to union officials funded through kickbacks from TradeVentureFund.

q.   GENE PHILLIPS, the defendant, secretly controlled Basic Capital, the adviser to American Realty Trust, Inc., the issuer of the ARB Series J Preferred stock.  PHILLIPS agreed with other members and associates of the enterprise to defraud union pension funds in connection with the sale of ARB Series J Preferred Stock.  PHILLIPS used his secret control of Basic Capital to order the issuance of ARB Series J Preferred Stock.

r.   A. CAL ROSSI, the defendant, was the managing director of capital markets for Basic Capital.  ROSSI structured the fraudulent ARB Series J Preferred Stock offering with members and associates of the enterprise and agreed that a portion of the offering proceeds would be used to pay secret bribes to union officials.

s.   Vincent G. Langella, a/k/a "Vinny," was an associate of the Colombo Crime Family.  Langella was a registered stock broker at, among other firms, William Scott, First Liberty

22

and Bryn Mawr.  Among other things, Langella participated in schemes to defraud investors in International Nursing and GTrade.

t.   WILLIAM F. PALLA, the defendant, was a principal of Monitor who facilitated the enterprise's secret control of Monitor.  Among other things, PALLA supervised the Monitor "boiler room" at 20 Exchange Place in Manhattan and jointly oversaw Monitor's trading activities.

u.   Todd M. Nejaime was a stock broker and promoter.  Among other things, Nejaime accepted secret bribes in return for procuring the sale of millions of dollars of stocks fraudulently promoted by the enterprise.  Nejaime also managed Monitor's Third Avenue office in Manhattan.

v.   Steven J. D'Apuzzo was affiliated with First Liberty Investment Group and acted as a "front" for the enterprise's interest in that firm.  Among other things, D'Apuzzo participated in the scheme to defraud investors in Globus International, and laundered the proceeds of securities frauds for the benefit of the enterprise.

### The Racketeering Violation

23.   From in or about early 1995 to the present, in the Southern District of New York and elsewhere, STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, A. CAL ROSSI, and WILLIAM F. PALLA, the

23

defendants, together with Robert A. Lino, a/k/a "Little Robert,"
James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a
"Frankie," Anthony P. Stropoli, Salvatore R. Piazza, a/k/a "Sal,"
Cary F. Cimino, Sebastian Rametta, a/k/a "Sebbie," James F.
Chickara, Robert P. Gallo, a/k/a "Bobby," Michael T. Grecco,
Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, Steven J.
D'Apuzzo and others known and unknown, being persons employed by
and associated with the racketeering enterprise described in
paragraphs one to twenty-two, which enterprise was engaged in,
and the activities of which affected, interstate and foreign
commerce, unlawfully, willfully, and knowingly conducted and
participated, directly and indirectly, in the conduct of the
affairs of that enterprise through a pattern of racketeering
activity, that is, through the commission of the following acts
of racketeering:

### The Pattern of Racketeering Activity

24.    The pattern of racketeering activity, as defined
in Title 18, United States Code, Sections 1961(1) and 1961(5),
consisted of the following acts:

### Racketeering Act One

### Fraud In Connection With The
### Purchase And Sale of Spaceplex Securities

25.    From in or about January 1995, up to and including
in or about October 1995, in the Southern District of New York
and elsewhere, JOSEPH A. MANN, a/k/a "Andy," the defendant,

24

together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Spaceplex common stock, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

### Racketeering Act Two

### Fraud In Connection With The Purchase And Sale of Reclaim Securities

26. From in or about May 1995, up to and including in or about September 1995, in the Southern District of New York and elsewhere, Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie,"

25

Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Reclaim common stock, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

### Racketeering Act Three

#### Fraud In Connection With The
#### Purchase And Sale of Beachport Securities

27.  From in or about August 1995, up to and including in or about May 1996, in the Southern District of New York and elsewhere, WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown,

unlawfully, willfully, and knowingly, by the use of the means and

instrumentalities of interstate commerce and of the mails,

directly and indirectly, used and employed manipulative and

deceptive devices and contrivances in violation of Title 17, Code

of Federal Regulations, Section 240.10b-5, by (a) employing

devices, schemes, and artifices to defraud, (b) making untrue

statements of material facts and omitting to state material facts

necessary in order to make the statements made, in the light of

the circumstances under which they were made, not misleading, and

(c) engaging in acts, practices, and courses of business which

operated and would operate as a fraud and deceit upon a person,

in connection with the purchase and sale of Beachport common

stock, in violation of Title 15, United States Code, Sections

78j(b) and 78ff and Title 18, United States Code, Section 2.

### Racketeering Act Four

### Fraud In Connection With The
### Purchase And Sale of International Nursing Securities

28.  From in or about October 1995, up to and including

in or about June 1996, in the Southern District of New York and

elsewhere, WILLIAM F. PALLA, the defendant, together with Robert

A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy,"

Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a

"Sal," Robert P. Gallo, a/k/a "Bobby," Todd M. Nejaime, Vincent

G. Langella, a/k/a "Vinny," and others known and unknown,

unlawfully, willfully, and knowingly, by the use of the means and

27

instrumentalities of interstate commerce and of the mails,
directly and indirectly, used and employed manipulative and
deceptive devices and contrivances in violation of Title 17, Code
of Federal Regulations, Section 240.10b-5, by (a) employing
devices, schemes, and artifices to defraud, (b) making untrue
statements of material facts and omitting to state material facts
necessary in order to make the statements made, in the light of
the circumstances under which they were made, not misleading, and
(c) engaging in acts, practices, and courses of business which
operated and would operate as a fraud and deceit upon a person,
in connection with the purchase and sale of International Nursing
common stock, preferred stock and warrants, in violation of Title
15, United States Code, Sections 78j(b) and 78ff and Title 18,
United States Code, Section 2.

### Racketeering Act Five

#### Fraud In Connection With The
#### Purchase And Sale of Leasing Edge Securities

29.    From in or about November 1995, up to and
including in or about October 1996, in the Southern District of
New York and elsewhere, Robert A. Lino, a/k/a "Little Robert,"
James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a
"Frankie," Salvatore R. Piazza, a/k/a "Sal," and others known and
unknown, unlawfully, willfully, and knowingly, by the use of the
means and instrumentalities of interstate commerce and of the
mails, directly and indirectly, used and employed manipulative

and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Leasing Edge common stock and warrants, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

### Racketeering Act Six

**Fraud In Connection With The**
**Purchase And Sale of Accessible Software Securities**

30.    From in or about December 1995, up to and including in or about May 1996, in the Southern District of New York and elsewhere, WILLIAM F. PALLA," the defendant, together with James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing

devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Accessible Software common stock, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

### Racketeering Act Seven

### Fraud In Connection With The
### Purchase And Sale of Globus International Securities

31. The members and associates of the enterprise named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Seven:

#### a. Securities Fraud Conspiracy

From in or October 1996, up to and including in or about January 1998, in the Southern District of New York and elsewhere, James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Frank A. Persico, a/k/a "Frankie," Anthony P. Stropoli, Steven J. D'Apuzzo, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States.

It was a part and an object of the conspiracy that James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Frank A. Persico, a/k/a "Frankie," Anthony P. Stropoli, Steven J. D'Apuzzo, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Globus International securities, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### OVERT ACTS

In furtherance of said conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    i.    On or about November 24, 1997, Anthony P. Stropoli caused the sale of 10,000 shares of Globus

31

International common stock at approximately $2.68 per share.

ii. On or about August 4, 1997, Steven J. D'Apuzzo caused the sale of 28,000 shares of Globus International common stock at approximately $3.14 per share.

b. **Securities Fraud**

From in or about October 1996, up to and including in or about January 1998, in the Southern District of New York and elsewhere, James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Anthony P. Stropoli, Steven J. D'Apuzzo, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Globus International

32

common stock, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

### Racketeering Act Eight

### Extortion of a Stock Promoter

32. The members and associates of the enterprise named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Eight:

a. **Extortion Conspiracy**

In or about April and May 1995, in the Southern District of New York and elsewhere, James S. Labate, a/k/a "Jimmy," Cary F. Cimino, Robert P. Gallo, a/k/a "Bobby," and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by taking money and property, namely, a $40,000 debt owed by a stock promoter to Cary F. Cimino, from and with the consent of the stock promoter, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would and did obstruct, delay, and affect commerce, and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Section 1951.

b.   **Attempted Extortion**

In or about May 1995, in the Southern District of New York and elsewhere, James S. Labate, a/k/a "Jimmy," Cary F. Cimino, Robert P. Gallo, a/k/a "Bobby," and others known and unknown, unlawfully, willfully, and knowingly attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), by taking and attempting to take money and property, a $40,000 debt owed by a stock promoter to Cary F. Cimino, from and with the consent of the stock promoter, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby would obstruct, delay, and affect commerce, and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), in violation of Title 18, United States Code, Sections 1951 and 2.

c.   **Extortion Conspiracy**

In or about April and May 1995, in the Southern District of New York and elsewhere, James S. Labate, a/k/a "Jimmy," Cary F. Cimino, Robert P. Gallo, a/k/a "Bobby," and others known and unknown, unlawfully, willfully, and knowingly, combined, conspired, confederated, and agreed together and with each other to steal the property of another, namely, a sum of money from a stock promoter, by means of extortion, by instilling in the stock promoter a fear that the defendants would cause

34

physical injury to some person in the future, in violation of New York State Penal Law.

### Racketeering Act Nine

### Money Laundering Conspiracy

33.  From in or about January 1995 to in or about December 1997, in the Southern District of New York and elsewhere, Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

It was a part and an object of the conspiracy that Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to

35

conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of fraud in the sale of securities issued by Reclaim, Beachport, and International Nursing, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

It was a further part and an object of the conspiracy that Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of fraud in the sale of securities issued by Reclaim, Beachport, and International Nursing, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity in violation of Title 18, United States Code, Section

36

1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h).

### Racketeering Act Ten

### Money Laundering

34.  The members and associates of the enterprise named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Ten:

On or about the dates listed below, in the Southern District of New York and elsewhere, James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Steven J. D'Apuzzo, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions, namely, the transfers set forth below out of an account held in the name Regency Group Enterprises at the clearing agent Bear, Stearns Securities Corp., represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, namely, fraud in the sale of securities of Globus International in violation of Title 15, United States Code, Sections 78j(b) and 78ff, with the intent to promote the carrying on of specified unlawful activity, to wit, fraud in the sale of other securities, including Innovative Medical, by providing an outlet for the

37

retail sale of stock by members of the enterprise, all in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2:

      a.    June 25, 1997; $67,146.36;

      b.    July 1, 1997; $44,752.44;

      c.    August 1, 1997; $121,766.89;

      d.    August 6, 1997; $120,130.38;

      e.    November 26, 1997; $91,372.21.

### Racketeering Act Eleven

### Money Laundering

35. The members and associates of the enterprise named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Eleven:

    a.    **Money Laundering Conspiracy**

From in or about December 1999 to in or about June 2000, in the Southern District of New York and elsewhere, James S. Labate, a/k/a "Jimmy," Anthony P. Stropoli, Salvatore R. Piazza, a/k/a "Sal," Michael T. Grecco, and Ralph DiMatteo, together with others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

It was a part and an object of the conspiracy that James S. Labate, a/k/a "Jimmy," Anthony P. Stropoli, Salvatore R. Piazza, a/k/a "Sal," Michael T. Grecco, Ralph DiMatteo, and others, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of fraud in the sale of securities, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

It was a further part and an object of the conspiracy that James S. Labate, a/k/a "Jimmy," Anthony P. Stropoli, Salvatore R. Piazza, a/k/a "Sal," Michael T. Grecco, Ralph DiMatteo, and others, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions, which in fact involved the proceeds of specified unlawful activity, to wit, the proceeds of fraud in the sale of securities, knowing that the transactions

39

were designed in whole and in part to conceal and disguise the
nature, the location, the source, the ownership, and the control
of the proceeds of specified unlawful activity, in violation of
Title 18, United States Code, Section 1956(a)(1)(B)(i), all in
violation of Title 18, United States Code, Section 1956(h).

    b. **Money Laundering**

    On or about December 22, 1999, in the Southern
District of New York and elsewhere, James S. Labate, a/k/a
"Jimmy," Anthony P. Stropoli, Salvatore R. Piazza, a/k/a "Sal,"
Michael T. Grecco, Ralph DiMatteo, and others known and unknown,
in an offense involving and affecting interstate and foreign
commerce, knowing that the property involved in a financial
transaction, namely, a wire transfer in the amount of $12,000
from Marine Midland Bank, New York, New York, represented the
proceeds of some form of unlawful activity, unlawfully,
willfully, and knowingly did conduct and attempt to conduct such
financial transaction, which in fact involved the proceeds of
specified unlawful activity, namely, fraud in the sale of
securities, knowing that the transaction was designed in whole
and in part to conceal and disguise the nature, location, source,
ownership, and control of the proceeds of specified unlawful
activity, in violation of Title 18, United States Code, Section
1956(a)(1)(B)(i), all in violation of Title 18, United States
Code, Sections 1956(a)(1)(B)(i) and 2.

### Racketeering Act Twelve

### Kickback and Wire Fraud Schemes
### Targeting Production Workers Pension Fund

36.    The members and associates of the enterprise named
below committed the following acts, any one of which alone
constitutes the commission of Racketeering Act Twelve:

   a.    **Receipt of Illegal Kickbacks**

From in or about October 1999 to the present, in the
Southern District of New York and elsewhere, Frank A. Persico,
a/k/a "Frankie," being an officer, counsel, agent, and employee
of an employee organization, namely, Production Workers Local
400, whose members were covered by an employee pension benefit
plan subject to title I of the Employee Retirement Income
Security Act, namely, the Production Workers Pension Fund, did
unlawfully and knowingly receive and agree to receive and solicit
fees, kickbacks, commissions, gifts, loans, money and things of
value because of and with intent to be influenced with respect to
his actions, decisions and other duties relating to questions and
matters concerning such plan, namely, the selection of an
investment adviser and the investment of plan assets in Series J
Preferred Stock and interests in TradeVentureFund, from Robert A.
Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy,"
Salvatore R. Piazza, a/k/a "Sal," JOHN M. BLACK, JR., JOSEPH A.
MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B.

41

LAKEN, GENE PHILLIPS, and A. CAL ROSSI, in violation of Title 18, United States Code, Sections 1954 and 2.

### b. **Payment of Illegal Kickbacks**

From in or about October 1999 to the present, in the Southern District of New York and elsewhere, JOHN M. BLACK, JR., JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully and knowingly did give and offer, and promise to give and offer, directly and indirectly, fees, kickbacks, commissions, gifts, loans, money and things of value to Frank A. Persico, a/k/a "Frankie," who was an officer, counsel, agent, and employee of an employee organization, namely, Production Workers Local 400, whose members were covered by an employee pension benefit plan subject to title I of the Employee Retirement Income Security Act, namely, the Production Workers Pension Fund, because of and with intent to influence Persico's actions, decisions and other duties relating to questions and matters concerning such plan, namely, the selection of an investment adviser and the investment of plan assets in Series J Preferred Stock and interests in TradeVentureFund, in violation of Title 18, United States Code, Sections 1954 and 2.

42

### c. **Wire Fraud**

From in or about October 1999 to the present, in the Southern District of New York and elsewhere, JOHN M. BLACK, JR., JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, namely, a scheme and artifice to obtain Production Workers Pension Fund assets by fraudulently causing them to be invested in ARB Series J Preferred Stock and interests in TradeVentureFund, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, namely, a fax transmission from San Francisco, California to New York, New York on or about March 2, 2000, in violation of Title 18, United States Code, Sections 1343 and 2.

43

## Racketeering Act Thirteen

## Scheme to Defraud DEA Annuity Fund

37. From in or about December 1999 to the present, in the Southern District of New York and elsewhere, STEPHEN E. GARDELL, JOHN M. BLACK, JR., JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, namely, a scheme and artifice to obtain assets of the Annuity Fund of the Detectives' Endowment Association by fraudulently causing them to be invested in ARB Series J Preferred Stock and interests in TradeVentureFund, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, namely, a fax transmission from San Francisco, California to New York, New York on or about April 13, 2000, in violation of Title 18, United States Code, Sections 1343 and 2.

44

**Racketeering Act Fourteen**

**Kickback and Wire Fraud Schemes**
**Targeting Local 137 Pension Plan**

38. The members and associates of the enterprise named below committed the following acts, any one of which alone constitutes the commission of Racketeering Act Thirteen:

a. **Payment of Illegal Kickbacks**

From on or about April 5, 2000 to the present, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully and knowingly did give and offer, and promise to give and offer, directly and indirectly, fees, kickbacks, commissions, gifts, loans, money and things of value to persons who were officers, counsel, agents, and employees of an employee organization, namely, officers of the International Union of Operating Engineers Local 137 located in Briarcliff Manor, New York, whose members were covered by an employee pension benefit plan subject to title I of the Employee Retirement Income Security Act, namely, the pension plans of IUOE Local 137 137A 137B 137C 137R AFL-CIO, because of and with intent to influence their actions, decisions and other duties relating to questions and matters concerning such plan, namely, the selection of an

45

investment adviser and the investment of plan assets in Series J Preferred Stock and interests in TradeVentureFund, in violation of Title 18, United States Code, Sections 1954 and 2.

### b. **Wire Fraud**

From on or about April 5, 2000 to the present, in the Southern District of New York and elsewhere, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, namely, a scheme and artifice to obtain assets of the pension plans of IUOE Local 137 137A 137B 137C 137R AFL-CIO by fraudulently causing them to be invested in ARB Series J Preferred Stock and interests in the TradeVentureFund, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, namely, a telephone call between San Francisco, California to New York, New York on or about April 13,

2000, in violation of Title 18, United States Code, Sections 1343 and 2.

### Racketeering Act Fifteen

#### Fraud In Connection With The
#### Purchase And Sale of GTrade Securities

39. From in or about January 2000 through in or about March 2000, in the Southern District of New York and elsewhere, JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Vincent G. Langella, a/k/a "Vinny," and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of GTrade common stock, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

47

## Racketeering Act Sixteen

## Bribe Receiving

40. From in or about early 1997 through in or about April 2000, in the Southern District of New York and elsewhere, STEPHEN E. GARDELL, the defendant, being a public servant, unlawfully, knowingly, and willfully, did solicit, accept and agree to accept any benefit, namely, cash, property and other things of value, from other persons, namely, James S. Labate, a/k/a Jimmy, and Salvatore R. Piazza, a/k/a "Sal," the defendants, and others, upon an agreement and understanding that his vote, opinion, judgment, action, decision, and exercise of discretion as a public servant would thereby be influenced, namely, STEPHEN E. GARDELL, the defendant, in return for such cash, property and other things of value, among other things, corruptly leaked information concerning federal law enforcement investigations obtained in his capacity as a NYPD detective to James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others, in violation of New York State Penal law.

## Racketeering Act Seventeen

## Tampering With A Cooperating Witness

41. Cary F. Cimino committed the following acts, any one of which alone constitutes the commission of Racketeering Act Seventeen:

### a. Criminal Solicitation of Murder

On or about August 3, 1999, in the Southern District of New York, Cary F. Cimino unlawfully, willfully, and knowingly, and with intent that another person engage in the murder of a cooperating witness, solicited, requested, commanded, importuned and otherwise attempted to cause such other person to murder said cooperating witness, in violation of New York State Penal Law.

### b. Witness Tampering

On or about August 3, 1999, in the Southern District of New York, Cary F. Cimino unlawfully, willfully, and knowingly, corruptly persuaded and attempted to persuade another person, with intent to influence, delay, and prevent the testimony of a cooperating witness in an official proceeding and hinder, delay and prevent the communication to a law enforcement officer of information relating to the commission and possible commission of a Federal offense, namely, Cary F. Cimino solicited the murder of a person he believed to be a cooperating witness to prevent his further cooperation and testimony, in violation of Title 18, United States Code, Sections 1512(b) and 2.

49

## Racketeering Act Eighteen

### Securities Fraud Conspiracy - Ranch *1

42. From in or about December 1999 to in or about June 2000, in the Southern District of New York and elsewhere, ANGELO CALVELLO, a/k/ "Tony," the defendant, together with James S. Labate, a/k/a "Jimmy," Sebastian Rametta, a/k/a "Sebbie," James F. Chickara, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to commit securities fraud, in violation of Title 15, United States Code, Sections 77q and 77x.

43. It was a part and an object of the conspiracy that ANGELO CALVELLO, a/k/ "Tony," the defendant, together with James S. Labate, a/k/a "Jimmy," Sebastian Rametta, a/k/a "Sebbie," James F. Chickara, and others known and unknown, unlawfully, willfully, and knowingly, in the offer and sale of securities by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly, would and did: (a) employ devices, schemes, and artifices to defraud; (b) obtain money and property by means of untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in transactions, practices and courses

50

of business which operated and would operate as a fraud and deceit upon the purchasers of the common stock of Ranch*1, in violation of Title 15, United States Code, Sections 77q and 77x, all in violation of Title 18, United States Code, Section 371.

44.    In furtherance of said conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about January 26, 2000, James F. Chickara attended a meeting at DMN Capital's office.

b.    On or about April 11, 2000, ANGELO CALVELLO, a/k/a "Tony, the defendant, met with James S. Labate, a/k/a "Jimmy," and another person at DMN Capital's office.

c.    On or about April 24, 2000, Sebastian Rametta, a/k/a "Sebbie," attended a meeting at DMN Capital's office.

### Racketeering Act Nineteen

### Securities Fraud -- The Manhattan Soup Man

45.    From in or about November 1999 to in or about June 2000, in the Southern District of New York and elsewhere, James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Sebastian Rametta, a/k/a "Sebbie," James F. Chickara, and others known and unknown, unlawfully, willfully, and knowingly, in the offer and sale of securities by the use of the means and instruments of transportation and communication in interstate

51

commerce and by the use of the mails, directly and indirectly, did: (a) employ devices, schemes, and artifices to defraud; (b) obtain money and property by means of untrue statements of material fact and the omission of material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in transactions, practices and courses of business which operated and would operate as a fraud and deceit upon the purchasers of the common stock of The Manhattan Soup Man, in violation of Title 15, United States Code, Sections 77q and 77x and Title 18, United States Code, Section 2.

### Racketeering Act Twenty

#### Fraud In Connection With The
#### Purchase And Sale of Healthwatch Securities

46. From in or about October 1999 through in or about November 1999, in the Southern District of New York and elsewhere, James S. Labate, a/k/a "Jimmy," and Michael T. Grecco, together with others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary

52

in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Healthwatch common stock, in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 18, United States Code, Section 2.

(Title 18, United States Code, Section 1962(c).)

## COUNT TWO

### Racketeering Conspiracy

The Grand Jury further charges:

47.    Paragraphs 1 through 22 and 24 through 46 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

48.    From in or about late 1994 to the present, in the Southern District of New York and elsewhere, STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, A. CAL ROSSI, and WILLIAM F. PALLA, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Anthony P. Stropoli, Salvatore R. Piazza, a/k/a "Sal," Cary F. Cimino, Sebastian Rametta, a/k/a "Sebbie," James F. Chickara, Robert P. Gallo, a/k/a "Bobby," Michael T. Grecco,

53

Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, Steven J. D'Apuzzo, and others known and unknown, being persons employed by and associated with the racketeering enterprise described in Paragraphs 1 through 22 of this Indictment, namely, an enterprise that was engaged in and the activities of which affected interstate and foreign commerce, unlawfully, willfully, and knowingly combined, conspired, confederated and agreed together and with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, to wit, the racketeering acts set forth in Paragraphs 24 through 46 of this Indictment as Racketeering Acts One through Twenty.

49.   It was a part and an object of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise.

(Title 18, United States Code, Section 1962(d).)

## COUNT THREE

### (Conspiracy To Commit Securities Fraud, Wire Fraud, And Commercial Bribery: Spaceplex)

The Grand Jury further charges:

50.   Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

54

**THE CONSPIRACY**

51.  From in or January 1995 through in or about October 1995, in the Southern District of New York and elsewhere, JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to commit: (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346; and (c) commercial bribery, in violation of Title 18, United States Code, Section 1952(a)(3).

**OBJECTS OF THE CONSPIRACY**

**Fraud in Connection with the
Purchase And Sale of Securities**

52.  It was a part and an object of the conspiracy that JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and

instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Spaceplex securities, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Wire Fraud

53.  It was further a part and an object of the conspiracy that JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby,"  Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, having devised a scheme and artifice to defraud, including a scheme and artifice, among other things, to (a) deprive a broker's customer of the intangible right to a broker's honest services, (b) violate a broker's duty to disclose to his customer

all material facts concerning securities transactions in the customer's account, and (c) obtain the customer's money and property, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, all in violation of Title 18, United States Code, Sections 1343 and 1346.

### Commercial Bribery

54.  It was further a part and an object of the conspiracy that JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, would and did travel in interstate commerce and use facilities in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, specifically, commercial bribery in violation of New York State Penal Law Sections 180.00 and 180.03, and, thereafter, would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, all in violation of Title 18, United States Code, Section 1952(a)(3).

57

## MEANS AND METHODS

55.   Among the means and methods by which JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby,"  Cary F. Cimino, Todd M. Nejaime, and their co-conspirators would and did carry out the conspiracy were the following:

a.   JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby,"  Cary F. Cimino, Todd M. Nejaime, and their co-conspirators, obtained control Spaceplex common stock through a fraudulent securities offering that purportedly complied with SEC Rule 504.

b.   JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby,"  Cary F. Cimino, Todd M. Nejaime, and their coconspirators engaged in manipulative securities trades for the purpose of fraudulently inflating the market price of Spaceplex common stock.

c.   JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby,"  Cary F. Cimino, Todd M. Nejaime, and

58

their co-conspirators, arranged for the payment of secret bribes to stock brokers who caused their customers to buy and hold Spaceplex common stock.

d.    JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby,"  Cary F. Cimino, Todd M. Nejaime, and their co-conspirators, sold Spaceplex common stock under the control of DMN Capital and related entities at fraudulently inflated prices.

## OVERT ACTS

56.   In furtherance of said conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    In or about late 1994, JOSEPH A. MANN, a/k/a "Andy," the defendant, met with two co-conspirators not named as defendants herein, in New York, New York to discuss, among other things, the issuance of Spaceplex stock to DMN Capital and related entities.

b.    On or about April 21, 1995, Todd M. Nejaime and a co-conspirator not named as a defendant herein caused a Gilford Securities customer to purchase approximately 10,000 shares of Spaceplex common stock.

c.    On or about April 24, 1995, James S. Labate, a/k/a, "Jimmy," and Salvatore R. Piazza, a/k/a "Sal," and a co-

59

conspirator not named as defendant herein caused DMN Capital to issue a check to Cary F. Cimino.

d.   On or about July 14, 1995, a co-conspirator not named as a defendant herein caused an Atlantic General customer to purchase approximately 1,000 shares of Spaceplex common stock.

(Title 18, United States Code, Section 371.)

## COUNT FOUR

### (Securities Fraud: Spaceplex)

The Grand Jury further charges:

57.   Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

58.   From in or about late 1994 through in or about September 1995, in the Southern District of New York and elsewhere, JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, did use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by:

60

(a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon a person, in connection with the purchase and sale of Spaceplex securities.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT FIVE

### (Conspiracy To Commit Securities Fraud, Wire Fraud, And Commercial Bribery: Beachport)

The Grand Jury further charges:

59.   Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

### THE CONSPIRACY

60.   From in or September 1995 through in or about May 1996, in the Southern District of New York and elsewhere, WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire,

61

confederate, and agree together and with each other to commit

offenses against the United States, to wit, to commit: (a)

securities fraud, in violation of Title 15, United States Code,

Sections 78j(b) and 78ff, and Title 17, Code of Federal

Regulations, Section 240.10b-5; (b) wire fraud, in violation of

Title 18, United States Code, Sections 1343 and 1346; and (c)

commercial bribery, in violation of Title 18, United States Code,

Section 1952(a)(3).

**OBJECTS OF THE CONSPIRACY**

**Fraud in Connection with the
Purchase And Sale of Securities**

61. It was a part and an object of the conspiracy that

WILLIAM F. PALLA, the defendant, together with Robert A. Lino,

a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore

R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F.

Cimino, Todd M. Nejaime, and others known and unknown,

unlawfully, willfully, and knowingly, by the use of the means and

instrumentalities of interstate commerce and of the mails,

directly and indirectly, would and did use and employ,

manipulative and deceptive devices and contrivances in violation

of Title 17, Code of Federal Regulations, Section 240.10b-5, by:

(a) employing devices, schemes, and artifices to defraud; (b)

making untrue statements of material facts and omitting to state

material facts necessary in order to make the statements made, in

the light of the circumstances under which they were made, not

misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of Beachport securities, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Wire Fraud

62.    It was further a part and an object of the conspiracy that WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, having devised a scheme and artifice to defraud, including a scheme and artifice, among other things, to (a) deprive a broker's customer of the intangible right to a broker's honest services, (b) violate a broker's duty to disclose to his customer all material facts concerning securities transactions in the customer's account, and (c) obtain the customer's money and property, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, all in violation of Title 18, United States Code, Sections 1343 and 1346.

## Commercial Bribery

63. It was further a part and an object of the conspiracy that WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, would and did travel in interstate commerce and use facilities in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, specifically, commercial bribery in violation of New York State Penal Law Sections 180.00 and 180.03, and, thereafter, would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, all in violation of Title 18, United States Code, Section 1952(a)(3).

### MEANS AND METHODS

64. Among the means and methods by which WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and their co-conspirators would and did carry out the conspiracy were the following:

64

a.   WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and their co-conspirators, obtained control of Beachport common stock through, among other means, fraudulent securities offerings that purportedly complied with SEC Rule 504.

b.   WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and their coconspirators engaged in manipulative securities trades for the purpose of fraudulently inflating the market price of Beachport common stock.

c.   WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and their co-conspirators, arranged for the payment of secret bribes to stock brokers who caused their customers to buy and hold Beachport common stock.

d.   WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P.

65

Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and their co-conspirators, operated three branches of Monitor in New York, New York that employed fraudulent and deceptive "boiler rooms" sales practices in connection with sales of Beachport common stock.

      e.   WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and their co-conspirators, sold Beachport common stock under the control of DMN Capital and related entities at fraudulently inflated prices.

### OVERT ACTS

      65.  In furtherance of said conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

      a.   On or about October 11, 1995, Todd M. Nejaime and a co-conspirator not named as defendant herein caused a Gilford Securities customer to purchase approximately 40,000 shares of Beachport common stock.

      b.   On or about October 31, 1995, a co-conspirator not named as defendant herein caused a Monitor customer to purchase approximately 50,000 shares of Beachport common stock.

c.    On or about December 7, 1995, James S. Labate, a/k/a, "Jimmy," and Salvatore R. Piazza, a/k/a "Sal," and a co-conspirator not named as defendant herein caused DMN Capital to issue a check to Cary F. Cimino.

d.    On or about May 28, 1996, Todd M. Nejaime and a co-conspirator not named as defendant herein caused a Monitor customer to purchase approximately 1,100 shares of Beachport common stock.

(Title 18, United States Code, Section 371.)

### COUNT SIX

### (Securities Fraud: Beachport)

The Grand Jury further charges:

66.    Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

67.    From in or about May 1995 through in or about September 1995, in the Southern District of New York and elsewhere, WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Cary F. Cimino, Todd M. Nejaime, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, did use and employ manipulative and deceptive

67

devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon a person, in connection with the purchase and sale of Beachport securities.

> (Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT SEVEN

### (Conspiracy To Commit Securities Fraud, Wire Fraud, And Commercial Bribery: International Nursing)

The Grand Jury further charges:

68. Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

### THE CONSPIRACY

69. From in or October 1995 through in or about June 1996, in the Southern District of New York and elsewhere, WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a

"Vinny," Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to commit: (a) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (b) wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346; and (c) commercial bribery, in violation of Title 18, United States Code, Section 1952(a)(3).

**OBJECTS OF THE CONSPIRACY**

**Fraud in Connection with the
Purchase And Sale of Securities**

70. It was a part and an object of the conspiracy that WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, would and did use and employ, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b)

69

making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of International Nursing securities, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Wire Fraud

71. It was further a part and an object of the conspiracy that WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, having devised a scheme and artifice to defraud, including a scheme and artifice, among other things, to (a) deprive a broker's customer of the intangible right to a broker's honest services, (b) violate a broker's duty to disclose to his customer all material facts concerning securities transactions in the customer's account, and (c) obtain the customer's money and property, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and

70

artifice, all in violation of Title 18, United States Code, Sections 1343 and 1346.

## Commercial Bribery

72. It was further a part and an object of the conspiracy that WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and others known and unknown, unlawfully, willfully, and knowingly, would and did travel in interstate commerce and use facilities in interstate and foreign commerce, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of unlawful activity, specifically, commercial bribery in violation of New York State Penal Law Sections 180.00 and 180.03, and, thereafter, would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of such unlawful activity, all in violation of Title 18, United States Code, Section 1952(a)(3).

## MEANS AND METHODS

73. Among the means and methods by which WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo,

71

a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and their co-conspirators would and did carry out the conspiracy were the following:

a.    WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and their co-conspirators, obtained control of International Nursing securities, including common stock, preferred stock and warrants, through, among other means, fraudulent securities offerings that purportedly complied with SEC Regulation S.

b.    WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and their co-conspirators engaged in manipulative securities trades for the purpose of fraudulently inflating the market price of International Nursing securities.

c.    WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and their co-

conspirators, arranged for the payment of secret bribes to stock brokers who caused their customers to buy and hold International Nursing securities.

d. WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and their co-conspirators, operated three branches of Monitor in New York, New York that employed fraudulent and deceptive "boiler rooms" sales practices in connection with sales of International Nursing securities.

e. WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and their co-conspirators, sold International Nursing common stock under the control of DMN Capital and related entities at fraudulently inflated prices.

### OVERT ACTS

74. In furtherance of said conspiracy and to effect the objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a. On or about December 1, 1995, Todd M. Nejaime and a co-conspirator not named as defendant herein caused a Monitor customer to purchase approximately 2,000 shares of International Nursing common stock.

b. On or about October 31, 1995, a co-conspirator not named as defendant herein caused a Monitor customer to purchase approximately 50,000 shares of International Nursing common stock.

c. On or about January 4, 1996, two co-conspirators not named as defendants herein caused a Monitor customer to purchase approximately 100,000 International Nursing warrants.

d. On or about December 29, 1995, James S. Labate, a/k/a, "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and a co-conspirator not named as defendant herein caused DMN Capital to issue a check in the name of "Rick Dane."

e. On or about December 29, 1995, Robert P. Gallo, a/k/a "Bobby," cashed a DMN Capital check issued in the name of "Rick Dane."

f. On or about December 29, 1995, Robert P. Gallo, a/k/a "Bobby," provided a quantity of cash to Frank A. Persico, a/k/a "Frankie".

74

g.   On or about January 5, 1996, Vincent G. Langella caused a William Scott customer to purchase 600 shares of International Nursing common stock.

(Title 18, United States Code, Section 371.)

## COUNT EIGHT

### (Securities Fraud: International Nursing)

The Grand Jury further charges:

75.   Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

76.   From in or about October 1995 through in or about June 1996, in the Southern District of New York and elsewhere, WILLIAM F. PALLA, the defendant, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," Robert P. Gallo, a/k/a "Bobby," Vincent G. Langella, a/k/a "Vinny," Todd M. Nejaime, and others known and unknown, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and of the mails, did use and employ manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts

75

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud upon a person, in connection with the purchase and sale of International Nursing securities.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT NINE

### (Union Pension Fund Fraud And Kickback Conspiracy)

The Grand Jury further charges:

77.   Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

### THE CONSPIRACY

78.   From in or October 1999 through the present, in the Southern District of New York and elsewhere, STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire,

76

confederate, and agree together and with each other to commit
offenses against the United States, to wit, to (a) commit
securities fraud, in violation of Title 15, United States Code,
Sections 78j(b) and 78ff; (b) commit wire fraud, in violation of
Title 18, United States Code, Sections 1343 and 1346; (c) receive
unlawful kickbacks with respect to the operations of employee
benefit plans, in violation of Title 18, United States Code,
Section 1954; and (d) pay unlawful kickbacks with respect to the
operations of employee benefit plans, in violation of Title 18,
United States Code, Section 1954; and (e) commit fraud by an
investment adviser, in violation of Title 15, United States Code,
Section 80b-6.

### OBJECTS OF THE CONSPIRACY

#### Fraud in Connection with the
#### Purchase And Sale of Securities

79.   It was a part and an object of the conspiracy that
STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a
"Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a
"Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the
defendants, together with Robert A. Lino, a/k/a "Little Robert,"
James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a
"Frankie," Salvatore R. Piazza, a/k/a "Sal," and others known and
unknown, unlawfully, willfully, and knowingly, by the use of the
means and instrumentalities of interstate commerce and of the
mails, directly and indirectly, would and did use and employ,

manipulative and deceptive devices and contrivances in violation
of Title 17, Code of Federal Regulations, Section 240.10b-5, by:
(a) employing devices, schemes, and artifices to defraud; (b)
making untrue statements of material facts and omitting to state
material facts necessary in order to make the statements made, in
the light of the circumstances under which they were made, not
misleading; and (c) engaging in acts, practices, and courses of
business which operated and would operate as a fraud and deceit
upon a person, in connection with the purchase and sale of
securities, all in violation of Title 15, United States Code,
Sections 78j(b) and 78ff.

### **Wire Fraud**

80. It was a part and an object of the conspiracy that
STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a
"Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a
"Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the
defendants, together with Robert A. Lino, a/k/a "Little Robert,"
James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a
"Frankie," Salvatore R. Piazza, a/k/a "Sal," and others known and
unknown, unlawfully, willfully, and knowingly, having devised a
scheme and artifice to defraud and for obtaining money and
property by means of false and fraudulent pretenses, and to
deprive others of their intangible right to the honest services
of officials of labor organizations, would and did transmit and

78

cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds for the purpose of executing such scheme and artifice, all in violation of Title 18, United States Code, Sections 1343 and 1346.

### Receipt of Illegal Kickbacks

81. It was a part and an object of the conspiracy that Frank A. Persico, a/k/a "Frankie," and others known and unknown, unlawfully and knowingly, being trustees of employee pension benefit plans and officers, counsel, agents, and employees of employee organizations whose members were covered by employee pension benefit plans, would and did receive and agree to receive and solicit fees, kickbacks, commissions, gifts, loans, money and things of value because of and with intent to be influenced with respect to their actions, decisions and other duties relating to questions and matters concerning such plans from STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," and Salvatore R. Piazza, a/k/a "Sal," in violation of Title 18, United States Code, Sections 1954.

## Payment of Illegal Kickbacks

82.   It was a part and an object of the conspiracy that
STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a
"Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a
"Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the
defendants, together with Robert A. Lino, a/k/a "Little Robert,"
James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a
"Frankie," Salvatore R. Piazza, a/k/a "Sal," and others known and
unknown, unlawfully and knowingly did give, offer, and promise to
give and offer, directly and indirectly, fees, kickbacks,
commissions, gifts, loans, money and things of value to trustees
of employee pension benefit plans and officers, counsel, agents,
and employees of employee organizations whose members were
covered by employee pension benefit plans, including Frank A.
Persico, a/k/a "Frankie," and others, because of and with intent
to influence their actions, decisions and other duties relating
to questions and matters concerning employee pension benefit
plans, in violation of Title 18, United States Code, Sections
1954.

## Fraud By An Investment Adviser

83.   It was a part and an object of conspiracy that
WILLIAM M. STEPHENS, the defendant, an investment adviser,
unlawfully, willfully and knowingly would and did, by the use of
the means and instrumentalities of interstate commerce, directly

80

and indirectly, (a) employ a device, scheme, and artifice to defraud the clients of an investment adviser (b) engage in transactions, practices, and courses of business which operated as a fraud and deceit upon the clients of an investment adviser, namely, Husic Capital Management and (c) engage in acts, practices, and courses of business which were fraudulent and deceptive, in violation of Title 15, United States Code, Sections 80b-6 and 80b-17.

**MEANS AND METHODS**

84. Among the means and methods by which STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and their co-conspirators would and did carry out the conspiracy were the following:

a. STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and their co-conspirators, devised fraudulent investment products,

81

including ARB Series J Preferred Stock and the TradeVentureFund, that appeared to be suitable investments for union pension funds.

b. STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and their co-conspirators, entered into corrupt agreements with union officials pursuant to which such officials, in return for kickbacks, would cause their pension plans to retain a corrupt investment adviser.

c. STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and their coconspirators, planned to cause the corrupt investment adviser, in violation of his fiduciary duties to his clients, to invest a portion of the union pension assets placed under his management in ARB Series J Preferred Stock and interests in the TradeVentureFund.

82

d.    STEPHEN E. GARDELL, JOHN M. BLACK, JR.,
ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy,"
WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS,
and A. CAL ROSSI, the defendants, together with Robert A. Lino,
a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A.
Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and
their co-conspirators, planned to secretly pay themselves
approximately 20% of the face value of all pension fund
investments in ARB Series J Preferred and a significant
percentage of assets placed in the TradeVentureFund.

e.    STEPHEN E. GARDELL, JOHN M. BLACK, JR.,
ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy,"
WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS,
and A. CAL ROSSI, the defendants, together with Robert A. Lino,
a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A.
Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and
their coconspirators, planned to use a portion of their illegal
profits to pay off union officials and to divide the remainder
among themselves.

**OVERT ACTS**

85.    In furtherance of said conspiracy and to effect
the objects thereof, the following overt acts, among others, were
committed in the Southern District of New York and elsewhere:

83

a.    On or about October 29, 1999, in the vicinity of DMN Capital's office in lower Manhattan, James S. Labate, a/k/a "Jimmy," met with Robert A. Lino, a/k/a "Little Robert," and another person, and told them that Frank A. Persico, a/k/a "Frankie," controlled at least $20 million in Local 400 pension money.

b.    On or about January 4, 2000, Frank A. Persico, a/k/a "Frankie," met with James S. Labate, a/k/a "Jimmy," and Salvatore R. Piazza, a/k/a "Sal," and another person, at DMN Capital's office in New York, New York.

c.    On or about January 11, 2000, JOSEPH A. MANN, a/k/a "Andy," the defendant, attended at meeting at DMN Capital's office.

d.    On or about January 20, 2000, A. CAL ROSSI, the defendant, attended at meeting at DMN Capital's office.

e.    On or about January 31, 2000, GENE PHILLIPS, A. CAL ROSSI, the defendants, attended at meeting at DMN Capital's office with Salvatore R. Piazza, a/k/a "Sal".

f.    On or about February 3, 2000, Frank A. Persico, a/k/a "Frankie," faxed a copy of Local 400's investment guidelines to DMN Capital's office.

g.    On or about February 9, 2000, GLENN B. LAKEN and JOHN M. BLACK, JR., the defendants, attended a meeting at DMN Capital's office.

84

h.    On February 18, 2000, James S. Labate, a/k/a "Jimmy," met with Robert A. Lino, a/k/a "Little Robert," and another person at DMN Capital's office.

i.    On or about March 1, 2000, JOHN J. BLACK, Jr. the defendant, while in DMN Capital's office, participated in a conference call with GLENN B. LAKEN, the defendant.

j.    On or about March 2, 2000, WILLIAM M. STEPHENS, the defendant, faxed a copy of his resume to DMN Capital's office.

k.    On or about March 22, 2000, WILLIAM M. STEPHENS, GLENN B. LAKEN, JOSEPH A. MANN, a/k/a "Andy," JOHN M. BLACK, Jr., the defendants, together with Salvatore R. Piazza, a/k/a "Sal", James S. Labate, a/k/a "Jimmy," and others, attended a dinner meeting at Joseph's Ristorante on Hanover Square in lower Manhattan.

l.    On or about March 23, 2000, WILLIAM M. STEPHENS, the defendant, conducted a presentation for union officials at DMN Capital's office attended by, among others, STEPHEN E. GARDELL, the defendant.

m.    On or about March 24, 2000, A. CAL ROSSI, and JOSEPH A. MANN, a/k/a "Andy," the defendants, attended meetings at DMN Capital's office.

n.  On or about April 3, 2000, GENE PHILLIPS and A. CAL ROSSI, the defendants, attended a breakfast meeting at the St. Regis Hotel in New York, New York.

o.  On or about April 13, 2000, WILLIAM M. STEPHENS, the defendant, faxed a copy of an airline ticket issued to STEPHEN E. GARDELL, the defendant, for round trip travel from New York to San Francisco to DMN Capital's office.

p.  On or about April 14, 2000, STEPHEN E. GARDELL, the defendant, met with James S. Labate, a/k/a "Jimmy," and others, at DMN Capital's office.

q.  On or April 19, 2000, STEPHEN E. GARDELL, the defendant, received $1000 in cash at his home in Staten Island, New York.

(Title 18, United States Code, Section 371.)

## COUNT TEN

### (Wire Fraud: Local 400)

The Grand Jury further charges:

86.  Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

87.  On or about March 2, 2000, in the Southern District of New York and elsewhere, JOHN M. BLACK, JR., JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together

with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Frank A. Persico, a/k/a "Frankie," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, namely, a scheme and artifice to obtain Production Workers Pension Fund assets by fraudulently causing them to be invested in ARB Series J Preferred Stock and interests in TradeVentureFund, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, namely a fax transmission from San Francisco, California to New York, New York.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

## COUNT ELEVEN

### (Payment of Illegal Kickbacks: Local 400)

The Grand Jury further charges:

88. Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

89. From in or about October 1999 to the present, JOHN M. BLACK, JR., JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL

87

ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully and knowingly did directly and indirectly give and offer, and promise to give and offer a fee, kickback, commission, gift, loan, money and thing of value to Frank A. Persico, a/k/a "Frankie," who was an officer, counsel, agent, and employee of an employee organization any of whose members are covered by an employee pension benefit plan, namely, the Production Workers Pension Fund, because of and with intent to influence with respect to, any of Persico's actions, decisions and other duties relating to any question and matter concerning such plan.

(Title 18, United States Code, Sections 1954 and 2.)

### COUNT TWELVE

### (Wire Fraud: DEA Annuity Fund)

The Grand Jury further charges:

90. Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

91. On or about April 13, 2000, in the Southern District of New York and elsewhere, STEPHEN E. GARDELL, JOHN M. BLACK, JR., JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, the defendants, together with Robert A. Lino, a/k/a "Little

Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza,
a/k/a "Sal," and others known and unknown, unlawfully, willfully,
and knowingly, having devised and intending to devise a scheme
and artifice to defraud and to obtain money and property by means
of false and fraudulent pretenses, representations and promises,
namely, a scheme and artifice to obtain assets of the Annuity
Fund of the Detectives' Endowment Association by fraudulently
causing them to be invested in ARB Series J Preferred Stock and
interests in TradeVentureFund, transmitted and caused to be
transmitted by means of wire communication in interstate and
foreign commerce, writings, signs, signals, and sounds for the
purpose of executing such scheme and artifice, namely, a fax
transmission from San Francisco, California to New York, New
York.

     (Title 18, United States Code, Sections 1343 and 2.)

## COUNT THIRTEEN

### (Theft of Honest Services: DEA)

     The Grand Jury further charges:

     92.  Paragraphs 1 through 22 of this Indictment are
repeated, realleged and incorporated by reference as though fully
set forth herein.

     93.  On or about April 24, 2000, in the Southern
District of New York and elsewhere, STEPHEN E. GARDELL, JOHN M.
BLACK, JR., JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS,
a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI,

the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, namely, a scheme and artifice to deprive the Detectives' Endowment Association of GARDELL's honest services, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, namely, a telephone call in interstate commerce between San Francisco, California and New York, New York.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

## COUNT FOURTEEN

### (Payment of Illegal Kickbacks: Local 137)

The Grand Jury further charges:

94.  Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

95.  From on or about April 5, 2000 to the present, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, and A. CAL ROSSI, and the defendants, together with Robert A. Lino, a/k/a "Little Robert," James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and

90

others known and unknown, unlawfully and knowingly did give and offer, and promise to give and offer, directly and indirectly, fees, kickbacks, commissions, gifts, loans, money and things of value to persons who were officers, counsel, agents, and employees of an employee organization, namely, officers of the International Union of Operating Engineers Local 137 located in Briarcliff Manor, New York, whose members were covered by an employee pension benefit plan, namely, the pension plans of IUOE Local 137 137A 137B 137C 137R AFL-CIO, because of and with intent to influence their actions, decisions and other duties relating to questions and matter concerning such plan, namely, the selection of an investment adviser and the investment of plan assets in Series J Preferred Stock and interests in TradeVentureFund.

(Title 18, United States Code, Sections 1954 and 2.)

## COUNT FIFTEEN

### (Securities Fraud: GTrade)

The Grand Jury further charges:

96. Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

97. From in or about January 2000 through in or about March 2000, in the Southern District of New York and elsewhere, JOSEPH A. MANN, a/k/a "Andy," the defendant, together with Robert A. Lino, James S. Labate, a/k/a, "Jimmy," Frank A. Persico, a/k/a

91

"Frankie," Vincent G. Langella, a/k/a "Vinny," and others known and unknown, unlawfully, willfully, and knowingly, by the use of the means and instrumentalities of interstate commerce and of the mails, directly and indirectly, used and employed manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon a person, in connection with the purchase and sale of GTrade common stock.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT SIXTEEN

### (Theft of Honest Services: NYPD)

The Grand Jury further charges:

98. Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

### Background

99. From in or about early 1997 to the present, STEPHEN E. GARDELL, the defendant, corruptly exploited his position as a detective in the New York City Police Department by

92

soliciting and receiving cash, property, and other things of value in return for (a) communicating confidential law enforcement information concerning organized crime investigations to, among others, James S. Labate, a/k/a "Jimmy," an associate of the Gambino Crime Family and a member of the enterprise described in Count One of this Indictment; (b) facilitating and attempting to facilitate the issuance of New York City Police Department pistol "carry" permits for Labate and another person; and (c) providing Labate, Piazza, and others such benefits as valid New York City law enforcement parking permits.

100. In addition to cash, the other things of value that STEPHEN E. GARDELL, the defendant, corruptly received in return for providing the information, services and items described in the preceding paragraph, included, but were not limited to, the following:

a.   At least $8,000 in money orders made payable to the contractor that built a swimming pool in GARDELL's backyard;

b.   Free and substantially discounted rooms and meals (commonly referred to as "comps") at casino hotels in Las Vegas, Nevada and Atlantic City, New Jersey; and

c.   A fur coat.

**Statutory Allegation**

101. On or about December 1, 1999, in the Southern District of New York and elsewhere, STEPHEN E. GARDELL, the defendant, together with James S. Labate, a/k/a "Jimmy," Salvatore R. Piazza, a/k/a "Sal," and others known and unknown, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, namely, a scheme and artifice to deprive the New York City Police Department of GARDELL's honest services, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, and sounds for the purpose of executing such scheme and artifice, namely, a telephone call in interstate commerce between Las Vegas, Nevada and New York, New York.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

**COUNT SEVENTEEN**

**(Securities Fraud: Ranch *1)**

The Grand Jury further charges:

102. Paragraphs 1 through 22 of this Indictment are repeated, realleged and incorporated by reference as though fully set forth herein.

103. From in or about December 1999 to the present, in the Southern District of New York and elsewhere, ANGELO CALVELLO, a/k/ "Tony," the defendant, together with James S. Labate, a/k/a "Jimmy," Sebastian Rametta, a/k/a "Sebbie," James F. Chickara,

94

and others known and unknown, unlawfully, willfully, and knowingly, in the offer and sale of Ranch *1 securities by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly, did: (a) employ devices, schemes, and artifices to defraud; (b) obtain money and property by means of untrue statements of material fact and omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engage in transactions, practices and courses of business which operated and would operate as a fraud and deceit upon the purchasers of the common stock of Ranch *1.

(Title 15, United States Code, Sections 77q and 77x; and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

104. The allegations contained in Counts One and Two of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963.

105. Through the aforesaid pattern of racketeering activity, STEPHEN E. GARDELL, JOHN M. BLACK, JR., ANGELO CALVELLO, a/k/a "Tony," JOSEPH A. MANN, a/k/a "Andy," WILLIAM M. STEPHENS, a/k/a "Bill," GLENN B. LAKEN, GENE PHILLIPS, A. CAL ROSSI, and WILLIAM F. PALLA, the defendants, have property constituting, and derived from, proceeds which they obtained,

95

directly and indirectly, from racketeering activity in violation
of Title 18, United States Code, Section 1962, thereby making
such property, or an amount of cash equivalent thereto,
forfeitable to the United States of America pursuant to Title 18,
United States Code, Section 1963(a)(3). The intent of the United
States of America to forfeit such property includes, but is not
limited to, at least the sum of $15,000,000 in United States
currency, which includes but is not limited to, all right, title
and interest of the aforementioned defendants in

     a.  Any and all bank accounts at HSBC in New York, New
York in the name of Crabbe Capital Group, Ltd. or Portly Trading
Corp.;

     b.  Any and all brokerage accounts at Wall Street
Equities, New York, New York, in the name of Crabbe Capital
Group, Ltd. or SBG Advisors, Ltd.; and

     c.  Any and all brokerage accounts at Dain Rauscher &
Co. in New York, New York in the name of Crabbe Capital Group;
all of which constitute proceeds obtained from racketeering
activity.

     106. Said defendants are jointly and severally liable
to the United States for these amounts described in the preceding
paragraph.

## Substitute Assets Provision

107. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants--

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property, including, but not limited to, the following property:

97

(viii)     Any right, title, and interest held by WILLIAM
F. PALLA, the defendant, in the real property and appurtenances
known as 141 Cardiff Lane, Haverford, Pennsylvania.

(Title 18, United States Code, Section 1963(a).)


_____                    _____
FOREPERSON                                  MARY JO WHITE
                                            United States Attorney

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

STEPHEN E. GARDELL,
JOHN M. BLACK, JR.,
ANGELO CALVELLO,
    a/k/a "Tony,"
JOSEPH A. MANN,
    a/k/a "Andy,"
WILLIAM M. STEPHENS,
    a/k/a "Bill,"
GLENN B. LAKEN,
GENE PHILLIPS,
A. CAL ROSSI, and
WILLIAM F. PALLA,

Defendants.

### INDICTMENT
S4 00 Cr. 632 (WHP)

18 U.S.C. §§ 1961, 371, 1952, 1954, 1343, 1346
15 U.S.C. § 78j(b), 78ff
17 C.F.R. § 240.10b-5

MARY JO WHITE
United States Attorney.

A TRUE BILL